UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61144-Civ-COOKE/BANDSTRA

HOBIRN, INC.,

    Plaintiff
vs.

AEROTEK, INC.,

    Defendant.
_____/

## **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

THIS MATTER is before me on Defendant's Motion to Dismiss. (ECF No. 11). I have reviewed the arguments, the complaint, and the relevant legal authorities. As explained in this order, Defendant's Motion to Dismiss is denied.

### I. BACKGROUND

This is a diversity action for negligent hiring, negligent misrepresentation, and violation of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") arising from alleged misrepresentations made in connection with a contract. On April 29, 2008, Plaintiff, Hobirn, Inc., entered into a services agreement ("Services Agreement") with Defendant, Aerotek, Inc. Compl. ¶ 23. Under the Services Agreement, Aerotek provided Hobirn with contract employees, including an employee named Wayne Guthrie. Compl. ¶ 25. It is the hiring of Mr. Guthrie that is at issue in this case.

As a separate matter, Hobirn failed to pay for Aerotek's services. As a result, on around March 9, 2009, Aerotek sued Hobirn in the Seventeenth Judicial Circuit in and for Broward County, Florida, to collect fees due under the Services Agreement. In that complaint, Aerotek asserted claims for an open account, quantum meruit/unjust enrichment, and breach of contract.

The state court granted default judgment for Aerotek after Hobirn failed to answer the complaint.

In the present action, Hobirn alleges that Aerotek negligently hired Mr. Guthrie and Aerotek made negligent misrepresentations that it would conduct a background and criminal history check on each employee it provided to Hobirn, but failed to actually do so. As noted above, Aerotek provided Mr. Guthrie to Hobirn as a contract employee. On around August 7, 2008, Hobirn decided to hire Mr. Guthrie directly to the position of shop foreman. Compl. ¶ 32. Hobirn alleges that it "justifiably rel[ied] on [its] belief that Aerotek had already performed a criminal background check and a prior employer reference check on Mr. Guthrie." Compl. ¶ 33. On October 2008, Hobirn gave Mr. Guthrie greater responsibilities at his job, including "*carte blanche* authority to supervise and oversee" various areas of operations. Compl. ¶ 34.

On around March 28, 2009, Hobirn claims it received a telephone call from Claudia Vasquez, the wife of Hobirn employee Juan Vasquez. Compl. ¶ 45. Ms. Vasquez reported to Hobirn that Mr. Vasquez had observed Mr. Guthrie stealing Hobirn inventory while at work. *Id*. Ms. Vasquez also reported that Mr. Guthrie had threatened Mr. Vasquez. *Id*. Hobirn claims this was the first time it heard anything about Mr. Guthrie's involvement in the theft of company property. *Id*.

After this phone call, Hobirn claims customers called to report that Mr. Guthrie told them to contact the company via his personal cell phone number, instead of the official company phone line. Compl. ¶ 46. On around October 2009, a Hobirn employee reported that Mr. Guthrie was shipping units to customers whose orders were either unpaid or had been cancelled. Compl. ¶ 47. When the employee confronted him, Mr. Guthrie threatened the employee with violence. *Id*. After this incident, Hobirn began scrutinizing its records and discovered that Mr. Guthrie had personally cashed payments from customers and created a fraudulent account in Hobirn's name to conduct transactions for his own benefit. Compl. ¶¶48-52. On around

November 3, 2009, Hobirn conducted its own background and criminal history check of Mr. Guthrie and discovered that he had an extensive criminal history, including a felony conviction for theft in 1994. Compl. ¶ 53. Hobirn claims that Aerotek would have discovered this criminal history had it conducted a background check. Compl. ¶ 61.

Aerotek moves to dismiss Hobirn's Complaint on the following grounds: (i) Hobirn cannot state a cause of action against Aerotek because its claims are procedurally barred by the compulsory counterclaim rule; (ii) Hobirn's claims for negligent misrepresentation and violation of FDUPTA are precluded by the terms of the Service Agreement; (iii) Hobirn's negligent misrepresentation claim fails to state a cause of action; and (iv) Hobirn's claims of negligent hiring and negligent misrepresentation are barred by the economic loss doctrine.

## II. LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required, but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). A complaint's factual allegations must be enough to raise a right to relief above speculative level. *Id.*

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir.

2008). A complaint is subject to dismissal under Rule 12(b)(6) "when the allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

### III. ANALYSIS

#### A. The Compulsory Counterclaim Rule Does not Apply

First, Aerotek argues that Hobirn's Complaint should be dismissed for failure to state a claim for which relief can be granted the compulsory counterclaim rule procedurally bars the claims. Hobirn argues that it only discovered that Mr. Guthrie had a criminal record on November 2009, approximately seven months after Aerotek filed its complaint on March 9, 2009. Thus, Hobirn's claims were not compulsory counterclaims at the time its Answer to Aerotek's state court complaint was due.

State law governs whether the failure to bring a compulsory counterclaim in a prior state court proceeding bars a subsequent federal diversity action on that claim. *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380 (11th Cir. 1991). Under Florida law, the failure to raise a compulsory counterclaim in the original suit will result in the waiver of that claim. *Yost v. Am. Nat'l Bank*, 570 So. 2d 350, 352 (Fla. Dist. Ct. App. 1990). The compulsory counterclaim rule will apply even where the first action resulted in a default judgment and was not tried upon the merits.[1] *Pesce v. Linaido*, 123 So. 2d 747, 749 (Fla. Dist. Ct. App. 1960). Rule 1.170 of the Florida Rules of Civil Procedure sets forth the compulsory counterclaim rule:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, provided it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

---

[1] Hobirn urges me to break with established Florida precedent and hold that the compulsory counterclaim rule does not apply where a party defaults in the first action. A federal court applying state law is bound to adhere to the state court's decisions "whether or not the federal court agrees with the reasoning on which the state court's decision is based or the outcome which the decision dictates." *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983).

4

and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.

A claim cannot be compulsory if it did not exist at the time the answer was due. *Kellogg v. Fowler, White, Burnett, Hurley, Banick & Strickfoot, P.A.*, 807 So. 2d 669, 672 (Fla. Dist. Ct. App. 2002). A counterclaim that has not yet accrued is not mature, and cannot be a compulsory counterclaim within the meaning of Rule 1.170. *Id*. A tort action accrues when the plaintiff "knows or reasonably should know of the tortious act giving rise to the cause of action." *Hearndon v. Graham*, 767 So. 2d 1179, 1184 (Fla. 2000); *see also Creviston v. Gen. Motors Corp.*, 225 So. 2d 331, 334 (Fla. 1969) ("[R]egardless of the underlying nature of a cause of action, the accrual of the same must coincide with the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights."); *City of Miami v. Brooks*, 70 So. 2d 306, 309 (Fla. 1954) (applying the discovery rule in negligence action).

The record in the state court action reveals that Aerotek served its state court complaint on Hobirn on June 27, 2009. The deadline for serving a responsive pleading in that case was July 17 or 22, 2009, depending on the method of service. *See* Fla. R. Civ. P. 1.090 and 1.140. According to Hobirn's complaint, it first learned of Mr. Guthrie's theft on around March 28, 2009, when Ms. Vasquez reported that her husband had observed Mr. Guthrie stealing Hobirn's inventory. Compl. ¶ 45. Aerotek argues that Hobirn's claims accrued at that point in time.

The report of the theft may have put Hobirn on notice that Mr. Guthrie was not a trustworthy or loyal employee. However, it did not put Hobirn on notice that Aerotek did not conduct a criminal history check. Hobirn only knew or reasonably should have known that Aerotek did not conduct such an investigation when it ran a background check itself on Mr. Guthrie and discovered his criminal history. Hobirn alleges that it ran this background check on around November 2009. Thus, Hobirn's claims did not accrue until after the time its answer was

5

due in the state court action.

### B. The Integration Clause of the Service Agreement Does not Preclude Hobirn's Claims for Negligent Misrepresentation and FDUPTA Violations

Aerotek argues that the integration clause of the Services Agreement precludes Hobirn's negligent misrepresentation claims. The integration clause states:

> This Agreement constitutes the entire agreement between the parties hereto, and there are no representations, warranties, covenants or obligations made by or among the parties except as set forth in this Agreement. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations, and all discussions, written or oral, of the parties, relating to the subject matter of this Agreement.

Aerotek notes that the Services Agreement does not contain any provision requiring that Aerotek perform background or criminal history investigations on every employee. Similarly, there are no provisions that expressly state that Aerotek will not be conducting such checks.

Hobirn argues that the mere existence of an integration clause "does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement." *Rodriguez v. Tombrink Enterprises, Inc.*, 870 So. 2d 117, 119 (Fla. Dist. Ct. App. 2003) (quoting *Mejia v. Jurich*, 781 So. 2d 1175, 1178 (Fla. Dist. Ct. App. 2001)). Aerotek counters that the holding in *Mejia* is limited to circumstances where the subject of the oral agreement is not covered by the contract. *See Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. Dist. Ct. App. 2002). In *Advanced Mktg. Sys.*, the court clarified that "a party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Id*. In that case, the court found that a purchase agreement that contained a provision stating the specific amount of commission to be paid to the broker expressly contradicted a previously misrepresentation regarding the payment of a rebate in connection with the sale of a yacht. Aerotek does not point to any provisions of the Services Agreement that expressly contradicts its previous statements that it would conduct

6

background checks as part of the services it was rendering to Hobirn.

In further support of its motion, Aerotek notes that "[r]eliance on a fraudulent misrepresentation is unreasonable as a matter of law where the alleged misrepresentation contradicts the express terms of the ensuing contract." *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1259 (S.D. Fla. 2009). The cases in this district, however, establish that this rule applies only where the misrepresentation claim is "directly and fully rebutted by express evidence in a governing written contract." *See, e.g.*, *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08-60739, 2008 WL 4346749, at *7 (S.D. Fla. Sept. 16, 2008) (collecting cases); *Galstadi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1063 (S.D. Fla. 2009) ("[D]isclaimer clauses will not bar fraud claims unless those clauses expressly and specifically address and contradict the misrepresentations on which the claims are based.").[2]

Because the integration provision of the Services Agreement does not expressly contradict the alleged misrepresentations regarding background checks, Hobirn's claims for negligent misrepresentation and FDUPTA violations cannot be dismissed on this ground.

### C. Hobirn's Complaint States a Cause of Action for Negligent Hiring

Aerotek argues that Hobirn cannot maintain an action for negligent hiring against it because Mr. Guthrie was Hobirn's employee when he allegedly committed his wrongful acts. Hobirn points to one Florida case—which both parties agree is the only Florida court case to address this issue—that states, in *dicta*, that liability under negligent hiring "can also attach for the conduct of an ex employee." *See Abbott v. Payne*, 457 So. 2d 1156, 1157 (Fla. Dist. Ct. App.

---

[2] Aerotek also cites *Gentry* for the proposition that a general disclaimer is sufficient to bar a claim for negligent misrepresentation. Def.'s Reply 7. In *Gentry*, the court found that oral misrepresentations were barred because the agreement specifically stated that any "oral statements of sales representatives or others . . . are void and have no effect." 602 F. Supp. 2d at 1257. Notably, the court held that because no terms in the contract expressly contradicted the defendant's misrepresentations concerning a development area of the real estate at issue, the defendant was liable as to those statements. *Id*.

1984). In *Abbott*, the court did not provide any further clarification on the circumstances necessary for such an action to lie. The only case cited in *Abbott* in support of this proposition is *Wayne v. Unigard Ins. Co.*, 316 So. 2d 581, 582 (Fla. Dist. Ct. App. 1975), which does not address whether an employer can be liable for the wrongful conduct of a former employee. In contrast, Aerotek points to a line of cases that have addressed post-termination wrongful conduct and held that liability does not lie. *See, e.g.*, *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1144 (2009).

      Although the cases in which an employer may be liable for the wrongful conduct of a former employee are likely rare, some courts have been confronted with such exceptional factual circumstances that warrant a finding of liability. *See, e.g.*, *Prymark v. Contemporary Fin. Solutions*, No. 07-cv-00103, 2007 WL 4250020, at *16 (D. Colo. Nov. 20, 2007) (brokerage firm could be liable for former employee's wrongful conduct where brokerage firm knew employee had previously violated SEC rules by conducting unregistered sales of securities, allowed the former employee to act as plaintiffs' registered agent during his employment and post-termination, and failed to tell plaintiffs about his prior wrongful conduct); *Marquay v. Eno*, 662 A.2d 272, 380-81 (N.H. 1995) (school district that knew or should have known of employee's propensity for sexually abusing students may be liable to abused students for negligent hiring, even if abuse occurs outside of school hours and after graduation); *McGuire v. Ariz. Protection Agency*, 609 P.2d 1080, 1082 (Ariz. 1980) (burglar alarm installation company could be liable if it knew or should have known former employee was a former felon where former employee who installed alarm in plaintiff's home later broke in and stole items after disconnecting alarm).

      These cases establish that employer liability for the negligent hiring of a former employee will only lie where the employer should have reasonably foreseen that the employee, who possesses a dangerous propensity the employer knew of or should have known of, would

8

have come into contact with the plaintiff through the employment. *See Prymark*, 2007 WL 4250020, at *16; *see also Marquay*, 662 A.2d at 281 ("Thus, employers have been held liable for criminal conduct by off-duty employees or former employees where such conduct was consistent with a propensity of which the employer knew or should have known, and the association between the plaintiff and the employee was occasioned by the employee's job.").

Hobirn makes the following factual allegations in support of its claim for negligent hiring:

(i) Prior to hiring Mr. Guthrie, Aerotek was required to conduct a background investigation on the employee, including an analysis of criminal history. Compl. ¶ 57.

(ii) Such an investigation would have revealed that Mr. Guthrie had an extensive criminal history that contained a report that Mr. Guthrie had dealt in stolen goods. Compl. ¶¶ 53, 60-61.

(iii) Mr. Guthrie and Hobirn were introduced as a direct consequence of Mr. Guthrie's employment with Aerotek. Compl. ¶ 58.

(iv) Aerotek could have foreseen, at the time of hiring, the danger Mr. Guthrie presented to Hobirn, which was ultimately manifested in the theft of Hobirn's goods, had Aerotek conducted a background check. Compl. ¶ 61.

(v) It was unreasonable for Aerotek to hire Mr. Guthrie in light of the information that Aerotek knew or should have known at the time of hiring. Compl. ¶ 62.

(vi) Injury to Hobirn was within the zone of foreseeable risks created by Aerotek's wrongful employment of Mr. Guthrie. Compl. ¶ 63.

(vi) Hobirn's damages were a direct and proximate result of Aerotek's negligent hiring. Compl. ¶ 64.

Hobirn has alleged sufficient facts to state a claim to relief that is plausible on its face.

### D. The Economic Rule Does Not Bar Hobirn's Claims

Finally, Aerotek argues that Hobirn's claims for negligent misrepresentation and negligent hiring should be barred by the economic loss rule because the parties were in contractual privity, Hobirn seeks only economic damages, and his allegations amount to no more than a simple breach of contract.

The economic loss rule is a judicially created doctrine that precludes certain tort actions where the only damages suffered by the plaintiff are economic losses. *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Id*. Thus, "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id*. (citing *Electronic Sec. Sys. Corp. v. Southern Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. Dist. Ct. App. 1986)). There are certain exceptions where a tort action will lie despite the existence of a contract. "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breach the contract." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).

Courts draw a distinction between claims for fraud in the performance of a contract, which are barred by the economic loss rule, and claims for fraudulent inducement. In *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. Dist. Ct. App. 1998), the court clarified:

> If a fraud is perpetrated which induces someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available. If there is no fraud inducing someone to enter into a contract, but the contract is breached, the cause of action sounds in contract and contract remedies are available.

Moreover, the court provided the following example, which is particularly helpful to

understand this issue:

> Suppose someone offers to sell you a particular emerald for $5,000 and, in order to induce you to buy it, represents to you that it is "top quality" and that it has not been filled. You buy it based on the factual representation that the stone is unfilled but later you learn that it, in fact, had been filled. If the seller knew the emerald had been filled but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud with all its attendant remedies. . . . Suppose, on the other hand, on December 1, 1997, the same person enters into a contract with you pursuant to which, in exchange for your payment of $5,000, he will deliver to you on January 1, 1998 a "top quality," unfilled emerald. If, on January 1, 1998, he instead delivers an emerald that has been filled, he has only breached the contract. It is immaterial whether, when he delivered the emerald on January 1, 1998, he knew the emerald was filled. This is breach of contract pure and simple and cannot be converted into a fraud. . . . In a fraud in the inducement situation, if there is damage based on a decision to contract that would otherwise not be made, a cause of action for fraud exists.

*Id*. at 713.

The allegations in Hobirn's complaint are sufficient to state a claim for negligent misrepresentation in the inducement of the contract. Hobirn claims that, prior to entering into the Services Agreement, Aerotek misrepresented to Hobirn that it would perform background checks on employees who were referred to Hobirn for placement. Compl. ¶ 66. Hobirn alleges that it would not have agreed to enter into the contract had it known that Aerotek's representations relating to conducting background checks were untrue. Compl. ¶ 29. Thus, Hobirn makes allegations that Aerotek's misrepresentations induced it to enter into the contract. Hobirn alleges that it suffered damages as a result of its decision to contract, which it would otherwise not have made but for the misrepresentations. Hobirn has alleged sufficient facts that Aerotek's wrongful conduct induced Hobirn to enter into the contract, and were not related to the performance of the contract.

Similarly, the economic loss rule does not bar Hobirn's negligent hiring claim because Hobirn has adequately pled that Aerotek owed a duty to Hobirn, extraneous of any contract requirements, to exercise reasonable care in hiring employee.

11

To prove a negligent hiring claim, a plaintiff must show: "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002). "[O]ne of the fundamental elements of actionable negligence under any theory is the existence of a duty owed to the person injured by the person charged with negligence." *Garcia v. Duffy*, 492 So. 2d 435, 439 (Fla. Dist. Ct. App. 1986). To establish that duty, "the plaintiff must demonstrate that he is within the zone of risks that are reasonably foreseeable by the defendant." *Id*.

Hobirn's allegations with respect to its negligent hiring claim are laid out above in section III.B. Those allegations are sufficient to show that Aerotek owed Hobirn a duty that was extraneous to any contractual requirements. *See id*. ("The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise."). Hobirn has pled sufficient facts to make out a plausible claim that Aerotek did not exercise reasonable case in performing its contractual obligation to provide employees to Hobirn.

### IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that the Defendant's Motion to Dismiss and Memorandum of Law (ECF No. 11) is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 31st day of March 2011.

                                                                            */s/ Marcia G. Cooke*
                                                                    MARCIA G. COOKE
                                                                    United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*